Nicholas M. Pette, J.
This is an action by the payees against the makers of a promissory note in the sum of $700. The pleadings are oral, the answer consisting of a general denial and two defenses, the pertinent one of which is the *824 absence of consideration. Plaintiffs have obtained summary judgment for the full amount of the note besides 15% thereof as costs of collection and attorneys’ fees as therein provided, or a total of $805 with interest from June 1, 1955, and the costs and disbursements of the action. The defendants contend that it was error to grant summary judgment for the plaintiffs and that they are entitled to judgment dismissing the complaint on the merits pursuant to that portion of rule 113 of the Rules of Civil Practice which empowers the court to grant judgment to the opposing side notwithstanding the absence of a cross motion.
The record before us contains evidentiary facts, including copies of all documents and correspondence between the parties or their attorneys, on the basis of which a disposition of the action on the merits may be made without a trial in the usual course. (Curry v. Mackenzie, 239 N. Y. 267; General Inv. Co. v. Interborough R. T. Co., 235 N. Y. 133.)
When the defendants took title to their home on December 23, 1954, they made and delivered to the plaintiffs, as sellers, the $700 promissory note in suit by which the purchase price was increased pursuant to a rider, added that day to the contract of purchase and sale, dated October 4,1954. That contract provided for the closing of title on November 30, 1954, and for its cancellation by either party if the purchasers were not able ‘‘ in good faith and with due diligence to obtain a mortgage commitment guaranteed by the F. H. A. for $11,700.00 on or before November 15th, 1954.”
By letter, dated November 17, 1954, plaintiffs’ attorney confirmed an adjournment of two weeks “ under the contract for the purposes of the FHA mortgage commitment.” He stated, also, that the F. H. A. inspector who had been shown the premises had indicated that they were acceptable for mortgage purposes. The letter concluded: “Needless to say if you require more time it will be forthcoming ’’. On December 14, 1954, the attorneys exchanged letters confirming an arrangement by which the defendants were permitted to move certain office furniture into the garage of the premises pending the closing. The defendants gave the plaintiffs a check for $200, the proceeds of which were to be credited to the purchase price if title closed as planned; otherwise, the money was to be returned less the necessary cost to restore the garage to its original condition and remove the furniture therefrom and place it in a public warehouse, if not removed by defendants. In plaintiffs’ letter of December 14,1954, acknowledging receipt of the check for $200, it was, in part, stated: “In fairness to my clients who have waited long and patiently in this deal, please *825 arrange to close title before Christmas, 1954. ’’ Receipt of that letter was acknowledged by the attorney for the defendants on December 18, 1954, with the assurance that ‘‘ we are doing everything within our power to close this matter by Christmas.”
On December 20, 1954, however, a formal notice was served on defendants wherein the plaintiffs stated that they were exercising their right to cancel the contract, dated October 4, 1954, because of the defendants’ “ failure to secure the specified mortgage commitment guaranteed by the Federal Housing Administration upon which the said contract is conditioned within the time allowed to you. ’’ By letter, dated December 21,. 1954, the defendants’ attorney notified the attorney for the plaintiffs that a final commitment had been obtained and that the closing was scheduled for December 23, 1954. Title was closed that day, but not before the price of the property was increased by the $700 represented by the note in suit. The rider to the contract, signed by the defendants and by the attorney for the plaintiffs as “ Attorney in Fact,” states that the consideration for the increase in the price of the property was the waiver by the sellers of “ any and all rights they may have to cancel the said contract due to an alleged default on the part of the purchaser therein in connection with obtaining an FHA insured commitment within the time specified in the said contract.”
The law which precludes an inquiry into the consideration for a negotiable instrument as against bona fide holders for value before maturity has no application where the suit is between the original parties to the instrument. (Negotiable Instruments Law, § 54; Strong v. Sheffield, 144 N. Y. 392, 394; Feinberg v. Mullin, 249 App. Div. 670.) The defendants having rebutted in their opposing papers the prima facie proof of consideration provided by law (Negotiable Instruments Law, § 50), the burden of establishing the consideration for the note rested upon the plaintiffs, and if from all of the evidence it appears that they have not met that burden, they cannot recover. (Irving v. Irving, 90 Hun 422, affd. 149 N. Y. 573; see, also, McClelland v. Climax Hosiery Mills, 252 N. Y. 347, 358.)
The sole consideration claimed by the plaintiffs for the note in suit was the relinquishment of their alleged right to cancel the contract of sale because of the defendants ’ default in failing to obtain an F. H. A. insured commitment within the time specified in the contract. They ignore, however, that on November 17, 1954, two days after the time to exercise their option to cancel it had expired, they extended the time two weeks with the assurance that if more time was required ‘‘ it will be forth *826 coming.” Then, when on December 14, 1954, they accepted the defendants’ check for $200 in escrow as a condition for permitting them to store some furniture in the garage of the premises under contract, they requested the defendants to “arrange to close title before Christmas, 1954.” On December 18, 1954, the defendants assured the plaintiffs in writing that they were doing everything within their power to close this matter by Christmas. Nevertheless, the plaintiffs, on December 20, 1954, attempted to cancel the contract. Under these circumstances, it may not reasonably be held that a waiver of plaintiffs’ claimed right to cancel the contract could furnish the consideration for the increase in the price of the property, when title thereto was closed on December 23, 1954, pursuant to the notice given by the defendants two days prior thereto.
Having successively extended the defendants’ time to close title to no later than December 24, 1954, and, by reasonable and necessary implication, defendants’ time to obtain a mortgage commitment (Wood v. Duff-Gordon, 222 N. Y. 88, 91), the plaintiffs must be deemed to have waived their right to cancel the contract until after that day. A waiver has been defined as “ an intentional abandonment or relinquishment of a known right or advantage which, but for such waiver, the party would have enjoyed. It is the voluntary act of the party and does not require or depend upon a new contract, new consideration or an estoppel. It cannot be recalled or expunged.” (Alsens Amer. Portland Cement Works v. Degnon Contr. Co., 222 N. Y. 34, 37; see, also, Davison v. Klaess, 280 N. Y. 252, 261.) Since plaintiffs’ waiver of their right to cancel the contract has here been established by the express declarations of the parties in their correspondence and by their acts pursuant thereto, no issue of fact is presented as would be the case if the proof permitted differing inferences.
Inasmuch as the plaintiffs were already bound to close title to the property not later than December 24, 1954, they could not cancel the sale prior thereto and forbearance to do so or to enforce the notice of cancellation served on December 20, 1954, was no consideration for the promissory note here sought to be enforced. While forbearance from asserting a right, either legal or equitable, is a sufficient consideration for a promise, that is not the case where, as here, the claimed right to cancel the contract asserted by the plaintiffs prior to the date set for the closing of title was not so doubtful, colorable or plausible as to raise an honest belief that it had some foundation in law or equity. (Springstead v. Nees, 125 App. Div. 230; Caruana v. Prudential Spice Co.; 178 N. Y. S. 401; see. also. *827 1 Williston on Contracts [Rev. ed.], § 135, pp. 475-476.) As Pollock put it “ ‘ neither the promise to do a thing, nor the actual doing of it, will be a good consideration if it is a thing which the party is bound to do by the general law, or by a subsisting contract with the other party. ’ ” (Vanderbilt v. Schreyer, 91 N. Y. 392, 401.)
The judgment and order should be reversed, with $10 costs, and summary judgment directed in favor of the defendants dismissing the complaint on the merits, with appropriate costs in the court below.
Hart and Di Giovanna, JJ., concur.
Judgment and order granting summary judgment in favor of the plaintiffs unanimously reversed, with $10 costs, and summary judgment granted in favor of the defendants, with appropriate costs in the court below.